UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**MICHAEL A. SHIPP**
UNITED STATES MAGISTRATE JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.  ROOM 2042
NEWARK, NJ 07102
973-645-3827

Not for Publication

REPORT AND RECOMMENDATION

September 19, 2011

**VIA CM/ECF**
All counsel of record

Re:  Electric Insurance Co. v. Electrolux North America, Inc.
     Civil Action No. 09-3792 (FSH)

Dear Counsel:

This Report and Recommendation is issued pursuant to 28 U.S.C. § 636(b)(1)(B). This matter comes before the Court on a motion for summary judgment by Defendant Electrolux North America, Inc. ("Electrolux" or "Defendant") against Plaintiff Electric Insurance Company ("EIC" or "Plaintiff"). (Docket Entry Number ("Doc. No.") 104 ("Def.'s Moving Br.").) Plaintiff opposes Defendant's motion and filed a cross-motion to strike Defendant's improper installation defense. (Doc. No. 110 ("Pl.'s Opp'n Br.").) For the reasons set forth below, the Undersigned respectfully recommends that the Court deny Defendant's summary judgment motion as to the New Jersey Product Liability Act claim, grant Defendant's summary judgment motion as to the Breach of Express Warranty claim, and deny without prejudice Plaintiff's cross-motion to strike the improper installation defense.

## I. BACKGROUND

### A. Jurisdiction

This case comes before the Court based on diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1). At the time this action commenced, Plaintiff was incorporated under the laws of Massachusetts with its principal place of business in Massachusetts and Defendant was incorporated under the laws of Delaware with its principal place of business in Georgia. (Doc. No. 1 ("Compl.") ¶¶ 1-2.) Based on the allegations set forth in the Complaint, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. (*Id.* at ¶ 4.)

### B. Factual Background

This matter arises from a fire occurring on January 15, 2009 in the home of Steven and Patricia Beringer (collectively, the "Beringers") in Old Tappan, New Jersey, which caused extensive damage. (*Id.* at ¶¶ 12, 15-17.) Plaintiff provided homeowner's insurance to the Beringers. (*Id.* at ¶¶ 1, 4.) Pursuant to the terms of the homeowner's policy, EIC covered the cost for the repair, restoration and replacement of the Beringers' home and property. Plaintiff asserts a product liability claim under the New Jersey Product Liability Act, N.J.S.A. §§ 2A:58C-1, *et seq.*, and a common law breach of express warranty claim.

While the parties agree that the fire at the Beringers' home started in the dryer ("Dryer") located in the second-floor laundry room, they disagree on what specifically caused the fire to ignite. (Doc. No. 104-3, Def.'s St. of Undis. Mat. Facts ("DUMF") ¶ 19; Doc. No. 112, Pl.'s Resp. to DUMF ¶ 19.) The Beringers purchased the Dryer online from General Electric in October 2006. (Pl.'s Opp'n Br. 10; Doc. No. 104-17, Ex. M ("Beringer Dep.") 7:21-8:1.) Under a section labeled "GE Dryer Warranty," the Owner's Manual contained the following language: "GE [w]ill [r]eplace [a]ny part of the dryer which fails due to a defect in materials or

2

workmanship. During this *limited one-year warranty*, GE will also provide, *free of charge*, all labor and related service costs to replace the defective part." (Doc. No. 104-18 ("Owner's Manual") 24 (emphasis in original).)

Defendant's cause and origin experts assert that the fire was caused by the Beringers' failure to clean and maintain the Dryer and its exhaust vent duct, which resulted in excess lint accumulation in the Dryer cabinet and/or improper installation of the Dryer. (DUMF ¶ 19.) While Plaintiff's expert, Dr. Donald J. Hoffmann, Ph.D., P.E., CFI ("Dr. Hoffmann"), concluded that the cause of the fire was a dryer defect, according to Plaintiff, he did not provide a precise defect because the fire destroyed certain evidence that was necessary to make such a determination. (Pl.'s Resp. to DUMF ¶ 1.) Nevertheless, Dr. Hoffmann determined that: (1) the fire started in the machine compartment in the area of its plastic blower housing; (2) the Dryer was supposed to be designed to operate safely even under conditions of total airflow restriction; (3) ignition of combustible materials should not occur absent a defect; (4) heat generated by the Dryer while operating under these conditions was sufficient to ignite combustibles in the cabinet; and (5) safety devices, specifically thermo switches, did not operate as intended to shut-off the gas before the Dryer caught fire. (*Id.*)

Although some lingering fact discovery issues remain in the case, counsel agree that the matter is now ripe for summary judgment.[1] As such, the Court will provide its recommendations below.

---

[1] The Court notes that Plaintiff's counsel did not file a Rule 56 Affidavit in opposition to Defendant's summary judgment motion. In addition, during the August 3, 2011 telephone status conference on the record, Plaintiff's counsel stated that the summary judgment motion was ripe for decision in spite of any outstanding discovery issues. The Court will issue a separate Report and Recommendation regarding Defendant's compliance with its discovery obligations.

3

## II. LEGAL STANDARD AND ANALYSIS

### A. New Jersey State Law Applies

When exercising diversity jurisdiction, a federal court must apply the choice-of-law rules of the state in which it sits. *Pepe v. Rival Co.*, 85 F. Supp. 2d 349, 380 (D.N.J. 1999), *aff'd* 254 F.3d 1078 (3d Cir. 2001) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *Robeson Indus. Corp. v. Hartford Accident & Indem. Co.*, 178 F.3d 160, 164 (3d Cir. 1999); *Nat. Util. Serv., Inc. v. Chesapeake Corp.*, 45 F. Supp. 2d 438, 446 (D.N.J. 1999). New Jersey's choice-of-law analysis requires application of the substantive law of the "jurisdiction with the most significant relationship and closest contacts with the transaction and the parties." *Pepe*, 85 F. Supp. 2d at 380; *see also Keil v. Nat. Westminster Bank, Inc.*, 311 N.J. Super. 473, 485 (App. Div. 1998).

In applying the "significant relationship" test, a court must determine: (1) "whether an actual conflict of law exists" and, (2) if so, "which state has the 'most significant relationship' to the claim by 'weighing the factors set forth in the Restatement [(Second) of Conflict of Laws]'." *Arlandson v. Hartz Mt. Corp.*, No. 10-1050, 2011 U.S. Dist. LEXIS 56462, at *14 (D.N.J. May 26, 2011) (citing *P.V. v. Camp Jaycee*, 197 N.J. 132, 142-43 (2008) and *Nikolin v. Samsung Elecs. Am., Inc.*, No. 10-1456, 2010 U.S. Dist. LEXIS 110942, at *9 (D.N.J. Oct. 18, 2010)). "This analysis . . . must be performed on an issue-by-issue basis." *Id.* (citing *Camp Jaycee*, 197 N.J. at 142-43) (applying separate analysis to Plaintiff's product liability action and claim for breach of express warranty).

The Court has determined that the law of New Jersey shall apply to each claim as Plaintiff's policyholders reside in New Jersey and the events giving rise to the claims occurred in New Jersey. *See id.* at **21-23, 29-31 (applying New Jersey substantive law under the

"significant relationship test" to both product liability action and the claim for breach of express warranty).

### B. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment may be granted if the pleadings, affidavits, discovery and disclosure materials "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, the "function [of the court] is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial." *Travelodge Hotels, Inc. v. Honeysuckle Enters., Inc.*, 357 F. Supp. 2d 788, 795 (D.N.J. 2005) (citing *Anderson*, 477 U.S. at 249); *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) ("a district court may not make credibility determinations or engage in any weighing of the evidence."). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. An issue of material fact is "genuine" if a reasonable fact-finder could find in favor of the non-moving party. *Id.*

At the summary judgment stage, the movant bears the initial burden of showing that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met its burden, the non-movant must set out specific facts showing that a genuine issue of material fact exists. *See Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109 (3d Cir. 1985). The non-movant must present actual evidence that raises a sufficient issue and may not rely on mere allegations, "mak[ing] a showing sufficient to establish the existence of [e]very element necessary to [its] case and on which [it] will bear the burden of proof at trial." *Cooper v. Sniezek*, 418 Fed. Appx. 56, 58 (3d Cir. 2011).

A non-moving party has adequately demonstrated the existence of a material issue of fact "if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mort., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001). In addition, when determining the presence of material issues, the court must draw all inferences in favor of the non-moving party. *Southerland v. Pennsylvania*, 389 Fed. App'x 166, 168 (3d Cir. 2010). Thus, when there is any evidence from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996) (internal citations omitted); *see also Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981) ("summary judgment has been characterized as 'a drastic remedy,' and . . . courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties. Furthermore, even if the preponderance of the evidence should appear to lie on the moving party's side, the court's function is not to decide issues of fact, but only to determine whether any issue of fact exists to be tried." (internal citations omitted)).

Summary judgment is inappropriate where expert reports and affidavits present conflicting testimony as to a material fact. *Fed. Labs., Inc. v. Barringer Research Ltd.*, 696 F.2d 271, 275 (3d Cir. 1982). *Compare Eli Lilly & Co. v. Actavis Elizabeth LLC*, 676 F. Supp. 2d 352, 360 (D.N.J. 2009) (citing *Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.*, 527 F.3d 1330, 1338-39 (Fed. Cir. 2008) (holding that "conflict in [expert] declarations created a genuine issue of material fact that made summary judgment inappropriate"), *rev'd in part on other grounds*, No. 10-1500, 2011 WL 3235718 (Fed. Cir. July 29, 2011), *and In re Gabapentin Patent Litig.*, 395 F. Supp. 2d 175, 180 (D.N.J. 2005) (in a patent litigation, finding that conflicting expert reports regarding the written description of a patent created disputed issues of material fact, thereby defeating summary judgment), *with Ford v. Panasonic Corp. of N. Am.*, 284 F. App'x

901, 903 (3d Cir. 2008) (affirming the District Court's decision to grant summary judgment despite conflicting expert reports where "the disputed issues . . . were issues of legal interpretation, not of facts. . . . ").

In the instant matter, Defendant moved for summary judgment as to: (1) Plaintiff's claim for breach of express warranty; and (2) Plaintiff's products liability claim. The Court will address each in turn.

### C. <u>Breach of Express Warranty - Contract Claim</u>

Under New Jersey law, in order to prove a claim of breach of an express warranty of a contract, the party asserting the claim must establish that:

> (a) any affirmation of fact or promise made by the seller to the buyer which relates to goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise; [and]
>
> (b) any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

N.J.S.A. § 12A:2-313(1); *see Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992). The Third Circuit has adopted the general rule that "latent defects discovered after the term of the warranty are not actionable." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249-50 (2d Cir. 1986)). As such, time-limited warranties generally do not protect buyers against latent defects that are discovered after the expiration of the warranty period. *Alban v. BMW of N. Am., LLC*, No. 09-5398, 2010 WL 3636253, at *7 (D.N.J. Sept. 8, 2010) (dismissing breach of warranty claims against BMW deriving from latent defects that existed during the time of the warranty) (citing *Duquesne Light Co.*, 66 F.3d at 616).

In the present case, Plaintiff asserts that the Dryer fire resulted in a breach of an express warranty. Plaintiff's Complaint provides:

> Electrolux expressly warranted that the Dryer was well designed, safely manufactured, constructed, assembled and inspected, not inherently dangerous, and fit and proper for the uses and purposes intended for such a product, and further represented that the Dryer did not constitute a dangerous or hazardous condition to individuals utilizing the Dryer.

(Compl. ¶ 39.) The Complaint asserts that Defendant "breached its express warranties that the design, construction, assembly and inspection of the Dryer would be free from defects and in accordance with all applicable codes and standards." (*Id.* at ¶ 40.)

Defendant argues that Plaintiff failed to provide evidence of an express warranty and to oppose Defendant's summary judgment motion as to the express warranty claim, thereby warranting dismissal of the claim. (Doc. No. 117 ("Def.'s Reply Br.") 3.) In support of its summary judgment motion, Defendant assumes *arguendo* that Plaintiff's claim for breach of express warranty is based on the language printed in the Owner's Manual. (Def.'s Moving Br. 24.)[2] As such, Electrolux asserts that the existence of any warranty covering product defects was limited to one year or the shortest period allowed by law. (*Id.*)

As Electrolux asserts that the existence of any warranty covering product defects was limited to one year and that the alleged defect did not surface until after the period expired, Plaintiff must show an issue of material fact that: (1) either contradicts Defendant's assertions that the express warranty was limited to one year or that the defect was discovered during the

---

[2] Defendant mentions that Plaintiff's breach of contract claim may have been meant as a claim for breach of an implied warranty for fitness for a particular purpose. However, as Defendant correctly notes, any such claim would be subsumed by the product liability claim. (Def.'s Moving Br. 9.) The Court agrees and, accordingly, finds no reason to address this issue further.

8

warranty period; or (2) any such express warranty was unconscionable. *See, e.g., Anderson*, 477 U.S. at 250 (holding that once the movant has met its burden, the non-movant bears the burden of raising a material issue of fact). Notably, Plaintiff failed to raise any issue of material fact to refute Defendant's contention that the expiration of the express warranty bars Plaintiff from recovering under its breach of contract claim. In fact, as Plaintiff's opposition did not address Defendant's position regarding the claim for breach of express warranty, Defendant's facts in support of this part of the motion shall be treated as admitted, as the facts are not contradicted by the evidence. *See Unum Life Ins. Co. of Am. v. Toomey*, No. 03-938, 2005 U.S. Dist. LEXIS 20037, at *4 (D.N.J. Sept. 7, 2005) (holding that Defendant's facts in support of his motion are "uncontroverted" as plaintiff failed to respond).

As Plaintiff failed to demonstrate the existence of any material fact related to the express warranty claim, the Undersigned finds good cause to recommend that the Court grant Defendant's summary judgment motion as to the claim.

### D. <u>Product Liability Claim</u>

Under New Jersey law, the party asserting a product liability claim must show by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose, because it: (1) deviated from the design specifications, formulae, performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae; (2) failed to contain adequate warnings or instructions; or (3) was designed in a defective manner. Notably, expert testimony or circumstantial evidence of the defect is necessary to prove a product liability claim. In addition, where the product in question is so complex such that its mechanical workings are beyond the scope of a jury's common knowledge, expert testimony is needed in order to assist the fact-

finder. *State Farm Fire & Cas. Co. v. Kaz, Inc.*, No. 06-474, 2008 WL 2122639, at *5 (N.J. Super. App. Div. May 22, 2008) (citing *Rocco v. N.J. Transit Rail Operations, Inc.*, 749 A.2d 868, 870 (N.J. Super. App. Div. 2000)).

In the present case, a jury would be required to determine whether there was a defect in the Dryer's blower housing unit and whether the alleged defect caused the fire. While jurors may have common experience with a dryer, jurors are not typically privy to its inner electrical design and wiring. Accordingly, an expert is necessary for Plaintiff to prove its product liability claim. *See Scully v. Fitzgerald*, 179 N.J. 114, 127 (2004); *see also Roccco*, 749 A.2d at 879 ("Where the case involves a complex instrumentality, expert testimony is needed in order to help the fact-finder understand the mechanical intricacies of the instrumentality and help to exclude other possible causes of the accident." (internal quotations and citations omitted)). Because the key components of the Dryer were destroyed by the fire, Plaintiff relies on the "indeterminate product defect test." Under this test:

> it may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff: (a) was of a kind that ordinarily occurs as result of a product defect; and (b) was not . . . solely the result of causes other than product defect existing at time of sale or distribution.

*Restatement (Third) of Torts* § 3 (1997). The New Jersey Supreme Court adopted the indeterminate product defect test in *Myrlak v. Port Authority of New York and New Jersey*, 157 N.J. 84, 104 (1999), stating:

> Although Section 3 of the Restatement is based on a *res ipsa* model, it permits the jury to draw two inferences: that the harmful incident was caused by a product defect, and that the defect was present when the product left the manufacturer's control . . . . [T]he requirements that the product was in the defendant's exclusive control at the time of the harmful incident . . . and that the defect occurred before the product left the control of the manufacturer, can be satisfied by . . . evidence negating other causes for the failure of the product for which the defendant would not be responsible.

EIC asserts that the indeterminate product defect test applies to the circumstances of this case because the inability to identify the exact cause of the fire is typical when the product ignites from within. (Pl.'s Opp'n Br. 7.) The actual materials of the blower housing and surrounding components of the Dryer were destroyed during the fire, so uncertainty exists as to the actual composition of those components at the time of the fire. (*Id.* at 16.)

As the indeterminate product defect test is conjunctive, to defeat Defendant's motion for summary judgment as to Plaintiff's product liability claim, Plaintiff must establish that there is a genuine issue of material fact as to both prongs of the test.

### 1. Whether the incident was of the kind normally caused by a product defect

Electrolux argues the type of fire which occurred at the Beringers' house was not the kind that would normally be caused by a product defect, and thus, Plaintiff does not satisfy the first prong of the indeterminate product defect test. (Def.'s Moving Br. 21.) Electrolux's support for this contention includes a report by U.S. Fire Administration, a division of the Department of Homeland Security, stating that 70% of dryer fires result from the users' failure to properly clean the machine. (Doc. No. 104-9 ("Fire Admin. Report.").) Electrolux also cites to a New Jersey Division of Fire Safety report and a Borough of Old Tappan newsletter. (DUMF ¶¶ 16, 17.)

Plaintiff refutes Defendant's contention and instead relies on a 2003 study of lint accumulation performed by the Association of Home Appliance Manufacturers ("AHAM"), which concluded that:

> (1) there is no empirical evidence, either in the lint ignition test or to AHAM's knowledge . . . that lint actually ignites in [the heater] areas and is transported after ignition to other parts of the dryer. . . .
>
> (2) [only] 1% of fires that breached the dryer involved lint . . . .

11

(Pl.'s Opp'n Br. 21-22.) Plaintiff further argues that documents produced by Electrolux reveal a pattern of similar dryer fires originating in or around the blower housing. (*Id.* at 22.); *see Main St. Am. Grp. v. Sears, Roebuck & Co.*, No. 08-3292, 2010 US. Dist. LEXIS 22667, at *24 (D. Md. March 11, 2010) (In evaluating the indeterminate product defect test, the Court should consider same accidents in similar products).

As both Plaintiff and Defendant submitted conflicting reports that raise a genuine issue of material fact as to whether the incident was of a kind normally caused by a product defect, the Court should not decide this issue of fact as this function is not appropriate at the summary judgment stage. *See Barringer Research Ltd.*, 696 F.2d at 275. Therefore, based on a careful consideration of the arguments, the Undersigned recommends that the Court find that Plaintiff has established a genuine issue of material fact as to the first prong of the test.

### 2. Whether the harm was not solely the result of causes other than a product defect existing at time of sale or distribution

Conflict in the expert reports creates a genuine issue of material fact as to the second prong of the test. Plaintiff's expert, Dr. Hoffmann of Safety Engineering Laboratories, Inc., examined photographs of the fire scene, examined the Dryer, performed testing on a different pre-owned Kenmore dryer manufactured by Electrolux and reviewed other case histories and information regarding Electrolux-built gas dryers. (*See generally* Doc. No. 104-6 ("Hoffmann Report").) Dr. Hoffmann concluded that the fire most likely originated inside the machine compartment of the Dryer, not outside, or in its drum. (*Id.* at 5.) Dr. Hoffmann further concluded that "the ignition of the combustible materials in the dryer's machine compartment is a result of a product defect." (*Id.*)

Dr. Hoffmann maintained this position during his deposition. He testified, "[i]n this dryer in the location where the fire originated, the only way that this fire originated at that

location was because of a defect within this dryer." (3/15/11 Dep. Tr. 32:5-9.) Dr. Hoffmann also testified regarding the fire's origination, ignition sources and the potential role and impact of lint. For example, Dr. Hoffmann testified:

> Under the conditions of this machine, under the conditions that we have there is a potential for lint build-up to occur within the blower housing. We know that lint didn't build up on the burner chamber. We know that there was lint present on the - - on the gas valves, but that wasn't sufficient to be a hazard. The only location I could identify that lint could build up and cause a hazard would have been in the blower housing. That hazard would have resulted in reduced air flow and should have been detected and shut down by the safety systems of the dryer.
>
> I think it's unlikely that lint ignited from some other location and was miraculously able to ignite the blower housing from the burner assembly without other conditions being - - occurring.

(*Id.* at 49:15-50:7.)

Dr. Hoffmann also testified regarding testing he performed. One exchange between Dr. Hoffmann and Defendant's counsel reflected:

> Q. But your testing, as I understand it, is simply a matter of taking a torch and holding it against the blower housing until it ignited?
>
> A. Right, we know the blower housing in the Beringer case ignited and burned. What I established with that is showing that that damage, the damage that we have to the dryer in both cases produces the same patterns, same combustible. It demonstrates exactly how the fire grew and spread and is consistent with the physical - - I mean the testimony of Mrs. Beringer and the physical evidence at the scene. All of those things bring [sic] back together tell me that the fire originated in the machine compartment.
>
> Q. But you didn't do testing to rule out the possibility that the fire started in the drum?
>
> A. Sure, I did.
>
> Mr. Traflet: Objection to form.
>
> A. I tested my theory by analyzing Mrs. Beringer's testimony and the timeline that I generated and established, and I examined the load to establish, number one, there was no way that the fire could have originated in the load and not be identified by Mrs. Beringer as burning.

13

> Number two, it establishes that the load damage, the physical damage to the dryer door itself showed no patterns of the load burning first, and Mrs. Beringer testified that she opened the door, but when you open the door there is no damage to the door itself.
>
> All the physical evidence, all of the testing evidence, and all of the testimony all establishes that the fire must have originated in the machine compartment.

(*Id.* at 119:13-120:22.)

Defendant, on the other hand, submitted three expert reports. First, Michael R. Nolan ("Mr. Nolan") drafted a report after he performed a fire scene analysis, examined the Dryer, conducted interviews and reviewed materials. (Doc. No. 104-15 ("Nolan Report").) Mr. Nolan concluded "that this fire originated in the GE dryer housing and was most likely the result of lint buildup in the dryer due to reduced airflow from improper installation of the rigid dryer vent duct." (*Id.* at 4.) Mr. Nolan also suggested "that another cause of the fire was likely the Beringers' failure to properly maintain the dryer by having the exhaust duct and dryer cabinet cleaned as recommended by the manufacturer." (*Id.*)

Similarly, John J. Mulcahy, P.E. ("Mr. Mulcahy") submitted an expert report for Defendant after he performed a nondestructive examination of the Dryer at the scene and a destructive examination at the laboratory. (Doc. No. 104-14 ("Mulcahy Report") 1.) Mr. Mulcahy found "that there were no signs of any electrical shorting or component failure in the dryer that would have been causal to the fire and that the excess buildup of lint in the exhaust duct was the primary cause of the fire in the dryer." (*Id.* at 6.)

Finally, Thomas J. Bajzek, P.E., CFEI ("Mr. Bajzek") of Engineering Systems Inc., wrote the third of Defendant's expert reports. (Doc. No. 104-13 ("ESI Report").) Mr. Bajzek did not inspect the fire scene and did not inspect the Dryer, but did review fire scene photographs, Dryer photographs, deposition transcripts and various dryer standards. (*Id.* at 2-3.) He also performed

14

testing on two dryers with proper and restricted air flow, and reviewed Dr. Hoffmann's expert report, noting several asserted flaws in the report. (*Id.* at 6, 10-11.) Mr. Bajzek concluded as follows:

1. The subject dryer and its external vent duct system were improperly installed and maintained.

2. The subject dryer met the requirements of all applicable codes and standards at the time it was manufactured, including but not limited to ANSI Z 21.5.1.

3. The conclusions set forth in Dr. Donald Hoffmann's expert report are unreliable because he does not identify an ignition source in the area of hypothetical origin, and he does not identify a specific design and/or manufacturing defect.

4. There is no evidence of any design or manufacturing defect in the subject dryer.

(*Id.* at 12.)

The deposition testimony of Defendant's experts is generally consistent with their expert opinions. However, Plaintiff pointed out various flaws in their deposition testimony, noting, "[f]or every posited theory of alternative causation (all based on speculative theories about movement of burning lint with the Dryer), Electrolux's experts concede that the theory has either been unproven or affirmatively disproven." (Pl.'s Opp'n Br. 19.) According to Plaintiff, Thomas Bajzek's testimony indicated that he was not aware of any tests that successfully proved the hypothesis "that a piece of lint could become ignited in the burner tube and travel through a spinning drum through a load of laundry into the lint trap and from there ignite the blower housing." (*Id.* at 19-20.) Similarly, Plaintiff notes that Mr. Nolan, Defendant's fire cause and origin expert, did not observe lint build-up on the base of the Dryer or excess lint inside the Dryer, which makes Electrolux's alternative theory of causation unsupported and implausible. (*Id.* at 21.) Furthermore, Plaintiff asserts that the claims files produced by Electrolux "reveal a

pattern of similar dryer fires, originating in or around the blower housing and showing a similar burn pattern to the Beringer Dryer."[3] (*Id.* at 22-23.)

In the present case, drawing all inferences in favor of the non-moving party, the affidavits, expert reports and deposition testimony demonstrate that Defendant has failed to satisfy its burden of showing that there are no genuine issues of material fact. *Celotex*, 477 U.S. at 323. Specifically, there is disputed expert testimony regarding how the Dryer caught fire in the area of the blower housing assembly within ten to twenty minutes of operation. While the Dryer's airflow was partially restricted as a result of lint buildup in a portion of the vent pipe, Plaintiff asserts that the Dryer was supposed to operate consistent with American National Standards Institute ("ANSI") criteria. Viewing the evidence in the light most favorable to the Plaintiff, if the Dryer complied with ANSI standards, it would have not become sufficiently hot to ignite materials in the area of the blower housing after only a few minutes of use. According to Plaintiff's expert, the Dryer's safety mechanism failed to keep combustible components below their ignition temperature. This presents a genuine issue of material fact. Dr. Hoffman's testimony, if accepted as true, negates Defendant's assertion that the Beringers' failure to maintain the Dryer and lint buildup were the sole causes of the accident.

During his deposition, Dr. Hoffmann did not appear to provide clear answers with respect to certain questions. In addition, certain areas of his testimony created concern for the Court. However, the Court's function at this stage of the proceedings is not to weigh the strength of the evidence, but to determine whether there is a genuine issue for trial. *Travelodge Hotels*, 357 F. Supp. 2d at 795. Resolving any doubts as to existence of genuine issues of fact against the Defendant, the Undersigned is constrained to recommend that the Court deny Defendant's

---

[3] Defendant intends to file a motion *in limine* to exclude evidence of alleged similar dryer fires.

summary judgment motion as to the product defect count. The Court does not weigh the strength of the evidence and does not opine as to whether the Plaintiff will ultimately be successful on the merits. Rather, the Court solely finds that the conflicting expert testimony between Dr. Hoffmann and Defendant's experts in the present case raises a genuine issue of material fact as to the existence of a product defect while Electrolux had control of the Dryer. Therefore, the Court finds that summary judgment should be denied on the product defect count.

### E. Plaintiff's Cross-Motion to Strike Electrolux's Negligent Installation Defense

Plaintiff asserts that Defendant's negligent installation defense should be stricken, because even after being specifically ordered on multiple occasions to disclose its version of how the fire occurred, Electrolux withheld facts and testing results that supported its theory of liability until the close of discovery. (Pl.'s Opp'n Br. 38-39.) According to Plaintiff, until Electrolux produced its rebuttal expert reports, no discovery had been produced to indicate that Electrolux intended to prove that the installer was responsible for the fire. (*Id.* at 39.) In addition, Electrolux did not join the installer and, in fact, opposed joinder of the installer when Plaintiff filed a motion to amend. (*Id.* at 40.) Plaintiff argues that a litigant is not permitted to take a position during one judicial proceeding and then take an inconsistent position during another, therefore requesting that the Court strike the negligent installation defense. (*Id.* at 42.)

Defendant opposes Plaintiff's cross-motion on procedural grounds, asserting that Plaintiff violated Local Civil Rule 7.1(h), which limits cross-motions to those related to the subject matter of the original action. (Def.'s Reply Br. 22-23.)

Defendant also opposes Plaintiff's cross-motion on substantive grounds, arguing that the Court already denied Plaintiff's motion for sanctions based on alleged discovery violations. (*Id.* at 23.) In addition, Defendant notes that the exclusion of critical evidence is an extreme

sanction, which should not be imposed absent a demonstration of willful deception or flagrant disregard of a court order. (*Id.* at 23-24.) Defendant argues that Plaintiff has been on notice of the improper installation defense since "day one" and EIC's equitable estoppel arguments are "empty and must be rejected." (*Id.*)

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Courts consider several factors in determining whether the doctrine applies in a particular case.

> First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled[.]' . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750-51 (internal citations omitted).

The Court finds that Plaintiff failed to demonstrate the estoppel factors under the facts of the present case. It was clear to the Court throughout the case that Defendant planned to assert an improper installation defense. Notably, the Court previously resolved a discovery dispute regarding allegedly privileged e-mail messages. The e-mail messages related to improper installation and concerned lint build-up in the Dryer. In addition, the Court denied *without prejudice* Plaintiff's motion to amend and Plaintiff failed to move again to join the installer. While Defendant certainly could have moved itself to join the installer, its failure to do so does not represent a clearly inconsistent position. Rather, it reflects Defendant's litigation strategy and Defendant will ultimately reap the benefits or consequences of such strategy. Regardless of

Defendant's litigation strategy, the Plaintiff did not demonstrate that the principles of estoppel should apply and, therefore, its cross-motion should be denied.[4]

## III. CONCLUSION

For the reasons set forth above, the Undersigned respectfully recommends that the Court enter the following Order:

1. Defendant's motion for summary judgment (Doc. No. 104) is granted in part and denied in part.

2. Defendant's motion for summary judgment as to Plaintiff's Breach of Express Warranty Claim is granted.

3. Defendant's motion for summary judgment as to Plaintiff's New Jersey Product Liability Act Claim is denied.

4. Plaintiff's cross-motion to strike the improper installation defense is denied without prejudice.

s/ Michael A. Shipp
**HONORABLE MICHAEL A. SHIPP**
**United States Magistrate Judge**

---

[4] In addition, the Court does not find that it is appropriate to address Defendant's alleged discovery deficiencies at this time. The Undersigned will issue a separate Report and Recommendation regarding Defendant's compliance with the Court's orders after the few remaining discovery issues in the case have been resolved.

19